(160 App. Div. 55)

## MacPHERSON v. BUICK MOTOR CO.

(Supreme Court, Appellate Division, Third Department.   January 7, 1914.)

1. NEGLIGENCE (§ 27*)—WHAT CONSTITUTES.

   Where a manufacturer of automobiles made no examination of wheels purchased from a reputable dealer other than to give the machine a road test, it was guilty of negligence; it being obvious that a defective wheel might cause serious injuries, and that the defects might, by proper inspection, be discovered.

   [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 25; Dec. Dig. § 27.*]

2. TRIAL (§ 252*)—INSTRUCTIONS—NEGLIGENCE—APPLICABILITY.

   In an action against an automobile manufacturer for damages for injuries caused by a defective wheel, where there was no evidence of any care in inspecting the wheel, the charge is not erroneous where, taken as a whole, it informed the jury that the defendant was not liable unless it was called upon, by the known dangers which would result from weak wheels, to make some reasonable inspection.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

Appeal from Trial Term, Saratoga County.

Action by Donald C. MacPherson against the Buick Motor Company. From a judgment for plaintiff, and an order denying defendant's motion for new trial, defendant appeals.   Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Butler & Kilmer, of Saratoga Springs (William Van Dyke, of Detroit, Mich., of counsel), for appellant.

Edgar T. Brackett and Harold H. Corbin, both of Saratoga Springs, for respondent.

JOHN M. KELLOGG, J.   Upon the first trial of this case a nonsuit was granted.   We reversed the judgment entered thereon in 153 App. Div. 474, 138 N. Y. Supp. 224, holding in substance that there was a question of fact for the jury.

The plaintiff claimed that he and two others were riding in the automobile, upon a good road, at a speed of about eight miles per hour, when the spokes in the left rear wheel broke and the wheel collapsed, the automobile went into the ditch, and the plaintiff was thrown out and injured.   The defendant claimed that the plaintiff was going at the rate of about 30 miles per hour when he struck several inches of loose gravel upon the road, and that the gravel and the high rate of speed caused the automobile to go into the ditch, and the spokes were broken when the wheel collided with a telegraph pole.   The verdict of the jury has established the fact that the wheel collapsed under the circumstances claimed by the plaintiff, and that his injury is due entirely to the weak and defective wheel.   We cannot say that the verdict is against the evidence.

The automobile was purchased by the plaintiff of Close Bros., of Schenectady, who had purchased it from the defendant, the manu-

facturer, in 1909. The defendant had bought the wheel from the Imperial Wheel Company, a reputable manufacturer of wheels, whose factory was situated about 100 yards from the defendant's factory. When received by the defendant, the wheel was ironed and was primed with one coat of paint. The defendant made no examination of it when received, except to see that it ran true and that it had not been marred in shipment. The quality of the wood in a spoke may be determined by its appearance, its grain, and its weight. The end of a spoke shows the grain better than the polished surface. The quality of the wood in a wheel can be judged better before than after it is ironed and painted. The priming coat upon the wheel covered the grain and made it more difficult to determine the quality of the wood by the eye. The wheels are primed by the manufacturer to keep out the moisture, but whether wheels shall be furnished with the priming coat, or oiled, or in their natural state is left to the determination of the defendant. The defendant had no wood expert, and never examined the wheels when in course of manufacture, or made any examination as to the safety of the wheel before it was put upon the car, but ran the car several miles on a trial test before it was sold, turning sharp curves and giving it severe usage. It had never known a wheel to collapse. on account of the poor quality of the wood from which it was made. Its attention had never been called to the necessity of making any examination to determine whether the wheels bought by it were safe or not; it assumed that they were safe.

The question for consideration is whether the defendant is responsible to the plaintiff for the injury caused by the defective wheel and whether the exceptions taken at the trial call for a reversal. The trial justice charged the jury in substance that the defendant was not liable unless an automobile equipped with a weak wheel was, to the defendant's knowledge, a dangerous machine, in which case the defendant owed the plaintiff the duty to inspect the wheel and see that it was reasonably safe for the uses intended; that if the machine, in the condition in which it was put upon the market by the defendant, was in itself inherently dangerous, and if the defendant knew that a weak wheel would make it inherently dangerous, then the defendant is chargeable with knowledge of the defects to the extent that they could be discovered by reasonable inspection and testing. Notwithstanding the fact that the wheel was purchased of a reputable manufacturer, the defendant still deemed it necessary to examine it and test it to see that it would run true and that it was not marred in shipment, otherwise the automobile would not be salable. It made no inspection or test as to the safety of the wheel or to discover any defects which might make it dangerous in actual use.

[1] The evidence indicates quite clearly that many other automobile manufacturers, prior to 1909, exercised no greater care as to wheels bought by them than the defendant exercised with reference to its wheels, and that no accident had resulted therefrom. This evidence indicated, not that the defendant was careful, but that the manufacturer had been very lucky. Shannahan v. Empire Engineering Corporation, 204 N. Y. 543, 550, 98 N. E. 9, 44 L. R. A. (N. S.) 1185;

Croghan v. Hedden Construction Co., 147 App. Div. 631, 634, 132 N. Y. Supp. 548.

Sometimes an accident happens where human foresight would not expect it. A person is not required to guard against an accident which naturally would not happen, or to examine for defects which it would be unreasonable or unusual to expect, and in such cases the practice of others in the same business, and the fact that no accident had occurred under like circumstances, are material. But if the condition is obvious, and it is evident to the ordinary man that danger is to be expected or may exist, the fact that others conduct their business carelessly and have been lucky furnishes no indemnity for the defendant's neglect. An ordinary person knows that the wheels of an automobile must be made of good material, and that a weak and defective wheel is liable to cause serious damage not only to the people using it but to many others. An automobile equipped with weak wheels would be an imminently dangerous machine. A serious accident is not necessary to call these facts to the attention of a casual observer. The manufacturer is fairly chargeable with knowledge of these facts.

In the old days, a farmer who desired to have wheels made for an ox cart would be apt to inspect the timber before it was painted, before the wheel was ironed and the defects covered up, in order that he might know what he was buying. He would realize that the oxen, in case of an accident or fright, as he would say, "might go pretty fast," and that if a wheel broke serious damage might occur to him or to others. He would know that a painted wheel, fully ironed, rendered it more difficult for him to form a good judgment as to the quality or kind of wood used. An ordinary man, in buying a pitchfork, a golf club, an axe helve, or an oar for a boat, will look at the timber, "heft it," and otherwise endeavor to ascertain whether it is made of suitable material. He is not satisfied with the fact that he is buying it of a reputable maker. It is not unreasonable to expect that the manufacturer of an automobile will give some attention at least to the material which enters into a wheel which he has purchased for use thereon.

If the defendant had purchased its wheels unpainted, a wood expert would have been of great assistance in determining the quality of the wood used. If it purchased the wheel painted, some of the paint could have been removed, the wheel could have been weighed, and an expert could have formed some judgment as to the quality of the wood used. There is some evidence of other tests, and it must be there is some way of determining the quality of the wood in such a wheel; if not, it must be negligence to purchase a wheel in such a forward state of construction that it is impossible to determine what it is made of. It is common knowledge that a wagon maker of reasonable experience and care could determine what quality of timber is suitable or unsuitable to put in a wheel and, by examining a wheel before painting, could form a reasonably accurate judgment as to the quality of the wood. All workers in wood examine and throw aside defective material, using only that which, upon examination, proves satisfactory. He is not satisfied with the fact that the material was purchased of a reputable manufacturer. It is not clear that the manufacturer in this case exer-

cised the care which was required under the circumstances, or that the defendant was informed or believed that such care had been exercised. It is clear, however, that the defendant made no reasonable effort to determine as to the safety of the wheels which it used.

[2] Many requests to charge were made and many exceptions were taken, but it is unnecessary to consider them, for when it was properly established that the wheel broke under the circumstances claimed by the plaintiff, and that no examination was made by the defendant as to the safety of the wheel, the liability of the defendant follows. The exceptions relate principally to charges by the court as to what reasonable inspection and care were required; but, if any care was required on the part of the defendant with reference to the safety of the wheel, the verdict is clearly right, when it is considered that the plaintiff's injuries were due to the defective wheel under the circumstances stated. The charge must be taken as a whole, and the jury could not have failed to understand that the defendant was not liable unless it was called upon, by the known dangers which would result from weak wheels, to make some reasonable inspection, or exercise some reasonable care, with reference to the wheels used. No real care being shown, the question as to what care might exempt the defendant from liability is not material. We find, therefore, no exception which calls for a reversal.

We hold that under the circumstances the defendant owed a duty to all purchasers of its automobiles to make a reasonable inspection and test to ascertain whether the wheels purchased and put in use by it were reasonably fit for the purposes for which it used them, and, if it fails to exercise care in that respect, that it is responsible for any defect which would have been discovered by such reasonable inspection and test.

The judgment and order should therefore be affirmed, with costs. All concur.