No. 8860.
*Orleans Appeal.*

ARTHUR J. ADKINS, Appellant, v. NEW ORLEANS RAILWAY & LIGHT CO., ET AL.

(April 27, 1925, Opinion and Decree.)
(June 22, 1925, Rehearing Refused.)

*(Syllabus by the Court.)*

1.　Louisiana Digest—Evidence—Par. 59, 60.
In a tort action, plaintiff must prove with reasonable certainty a specific act of negligence charged in his petition; failing so to do, a judgment of the trial court, by which conflicting evidence has been resolved in favor of the defendant, will be affirmed.

(Civil Code, Art. 2315.　Editor's note.)

Appeal from Civil District Court, Parish of Orleans, Division "D", Hon. Porter Parker, Judge.

This is a suit to recover damages brought by one who was injured in falling from a street car. Judgment for defendant. Plaintiff appealed.

Judgment affirmed.

Fred. G. Veith, attorney for plaintiff and appellant.

Dart, Kernan & Dart, attorneys for defendant and appellee.

BELL, J.　Plaintiff, who was injured in falling from a street car of the defendant railway company, has sued the company and its bondsman, the National Surety Company, in damages. There was a judgment dismissing both defendants and plaintiff has appealed. There does not appear from the record that plaintiff offered or produced any evidence to sustain his demand against the National Surety Company, and hence as to this defendant, the judgment appealed from must in any event be affirmed, in accordance with the ruling of this court, made in the case of Gardner vs. O'Keefe et al., No. 9057 of the docket of this court, affirmed by the Supreme

Court on writ of review. Gardiner vs. O'Keefe, 155 La. 447, 99 South. 398.

The petition alleges that plaintiff, while a passenger on a street car operated by the New Orleans Railway and Light Company, was violently pushed from the rear platform of this defendant's car by the conductor of the car, who was attempting, in the performance of his duty, to follow two other passengers who had created a disturbance while riding on the car, and who were making their escape therefrom; that plaintiff was in no manner connected with the altercation or disturbance which had arisen between the conductor and the two other passengers; that, as a result of the accident, plaintiff suffered a fracture of the tibia of the left leg, was confined to his home for several weeks and incapacitated for work in his trade as barber for over four months, and suffered great bodily pain and mental anguish. For these injuries and for loss of time and doctor bills, he claims the sum of $5,000.00.

The defendant railway company answered by denying generally the allegations of fault and of damages, or that it was liable on the bond of its surety, made co-defendant, and averred that the passenger who was on the platform and who gave his name as that of the plaintiff, was knocked from the platform by two other colored passengers, who hastily left the car. The answer of the National Surety Company was to the same effect.

The sole allegation of fault or negligence charged in the petition is that the conductor violently pushed plaintiff off the platform of the car. The only evidence to this effect is the testimony of the plaintiff and his colored friend, named Brown, who was also a passenger on the car.

Adkins, the plaintiff herein, testified that he boarded the Louisiana Avenue car at Gravier and Rampart Streets, together with two men, who subsequently caused the disturbance; that the conductor and a policeman rushed through the car to "hold" (meaning to arrest) the two passengers who were causing the disturbance. He further says that while so rushing through the car "they" knocked him off and the policeman jumped down and "throwed a gun" on him, telling him at the same time to take his hand out of his pocket. He finally says that he was thrown off by the conductor in the middle of Melpomene Street; that before he was thrown off, at the intersection of Melpomene and South Franklin Streets, the two disturbers had already jumped off in the middle of the block of Franklin Street, between Thalia and Melpomene, and that these two men did this as soon as they saw the policeman and the conductor coming through the car; that the car was very crowded, and the conductor started at Erato Street (two blocks below Melpomene) to go to the front of the car for the policeman; that he, plaintiff, was standing all the while on the back platform of the car, on the right side of the door or entrance to the body of the car as the car moved uptown and while he was facing, or looking in that direction; that he was a foot or two from the edge of the platform, standing between the edge of the platform and the door; that his back was towards the step of the car; that he was holding the handle of the car-door, and that when the disturbers came towards him with a rush, he let go of the handle and "got back" to give them a chance to get off. After making this clear and positive statement, this witness then qualifies his remarks by saying that he never had to get out of their way, for they were always on the platform with him and behind him and between him and the step, but that he turned loose his hold and stepped back to let the policeman and the conductor pass, when the conductor, who was ahead of the policeman, knocked him off.

Brown, the other witness for plaintiff, testifies that he was standing on the car, not on the platform, but on the side or edge of the rear door leading to the plat-

form; that two other men, referred to in Adkins' testimony, were having a discussion with the conductor on the back of the car; that the conductor went forward into the car to get a policeman, who was in front on the motorman's platform, and while the conductor and policeman were returning to the rear platform, these two disturbers jumped off about the middle of the block, that is, between Thalia and Melpomene Streets. This witness swears that while the "motorman" (meaning evidently the conductor) and the policeman were rushing and grabbing at the two colored fellows, "they" shoved plaintiff off the car. He finally swears that only the conductor shoved plaintiff off and that the policeman was right behind the conductor. If this witness' testimony be true, then plaintiff is bound to have been knocked off in the middle of the block, for he swears that it was while the conductor and policeman were grabbing at the disturbers, that plaintiff was knocked from the platform. A preponderance of evidence establishes the fact that plaintiff fell or was knocked from the car at the intersection of Franklin and Melpomene Streets. Other portions of this witness' testimony is found to be equally unreliable and contradictory, and we are unable to give any weight to his evidence.

The material witnesses for the defendant railway company were William Croawell, a white man, passenger on the car, George Burd, the motorman, and police officers Kolb and Shannon.

Croawell testified that he lived on Melpomene, near the scene of the accident, between Franklin and Liberty Streets, and that he had been riding on the front of the car, with the motorman, Policeman Kolb and a friend; that he jumped off the front of the car at Melpomene and South Franklin Streets, while it was in motion, and walked towards the end of the moving car as it was about to come to a stop at the uptown lake corner, opposite or in

front of a bakery shop; that just at the moment of his reaching the rear of the car, he saw the disturbers shove plaintiff off the car; that plaintiff fell right on the culvert in front of witness. He further testifies that when the car came to a full stop, the policeman, conductor and motorman all came up beside him, and that he called Policeman Kolb's attention to the disturbers, who were running down Frankline Street, on the lake side of that street; that he, witness, did not know plaintiff before the accident, but knew Brown, who had pressed his clothes, and that Brown seemed to him to have jumped off the car right after the accident; that he first saw plaintiff standing on the car step just before he was pushed off by the fleeing negroes, and that the car was near the end of the culvert when plaintiff fell off, and that the car had to go about fifteen or twenty feet further before it came to a stop at the uptown lake corner, beyond the upper roadway of Melpomene Street.

Officer Kolb testifies that he was on the front of the car, and that when asked by the conductor, while the car was between Thalia and Melpomene Streets, to come to the rear and help quiet the disturbers, he, witness, proceeded ahead of the conductor, towards the end of the car. He further swears that when he got to the end, the car had stopped, and that he then noticed two men running down Franklin Street, and that, with his gun in his hand, he chased them for a short distance, some five or ten feet, but seeing he could not catch them, he returned to where plaintiff was lying on the culvert, and where he had first noticed plaintiff when he jumped off the car to run after the disturbers. He says the car had passed the Melpomene culvert and that plaintiff must have been lying about two or three feet from the car. He makes several different statements as to just where the car had stopped. His first statement is that it had passed the

Melpomene culvert, and then he says it was pretty nearly on the upper crossing by the bakery shop, and finally he says: "I guess the rear end of the car was stopped right in the center of the Melpomene culvert."

Officer Shannon says that he did not see the accident; that he was in the act of going into the bakery shop on the upper lake corner to use the telephone; that he saw the car stop, and noticed a crowd, he walked over there and saw the plaintiff lying on the Melpomene culvert, in the middle of the street; that he spoke to plaintiff, who said that his leg was hurt, and then ordered Officer Kolb to telephone for the ambulance. This witness first says he thinks the rear of the car, after it had come to a stop, was very near the culvert on the uptown side. He then says that the car had cleared the culvert and the roadway on the uptown side of the culvert before it stopped. This latter statement squares with Croawell's testimony as to where the car had finally stopped. This witness further testifies that he does not know how plaintiff fell; that the motorman, conductor and policeman were all outside of the car and around the injured man when witness got to where plaintiff was lying, and that he heard "they say that two men knocked plaintiff off the car and ran up the street".

There is a statement dictated in the record by counsel for the railways company that the conductor of the car, who was not produced as a witness, was in Denver, Colorado, at the time of the trial.

Motorman Burd testifies that he did not see the accident; that just as his car was approaching Melpomene Street, the conductor came to the front and asked him to come to the rear and help him, as there was some disturbance on the back platform; that he told the conductor to take the police officer, who was on the front platform, and that when the officer and conductor started back through the car, he, the motorman, threw off the power and slammed on the brakes and jumped off the front end of the car; that he then saw plaintiff lying in the middle of the street, that is, on the culvert, or, as he termed it, "the neutral ground". This witness is consistent and positive in his statement that his car stopped somewhere between the Melpomene culvert and the regular stopping place, and that the rear end of his car was a few feet short of where it would ordinarily have stopped. He finally says that the car was well crowded, and that plaintiff, after the accident, must have been lying more than ten feet from the rear of his car, because the back end of his car was stopped just a few feet on the lower side of the crossing or roadway. There is evidence going to show that the conductor had refused to issue transfers to the two colored men who fled from the car, for the reason it was after midnight, at an hour when transfers are not given, under the rules of the company. His refusal resulted in abuse from these and another colored passenger, causing the disturbance which the conductor attempted to quell by calling on the motorman and Officer Kolb for assistance. There is nothing in the record to show that the conductor was the aggressor or that he failed to do or perform any of the duties encumbent upon him as employee.

From our appreciation of the evidence as detailed above, we are unable to conclude that plaintiff has established with any certainty whatever, the act of negligence charged in his petition, to the effect that he was pushed or thrown from the car by the conductor. On the contrary, we are forced to believe, as did doubtlessly the trial judge, that plaintiff was pushed from the rear platform by the disturbers, who did not flee from the car while it was in the middle of the block, but at a point near the corner at which the car finally came to a stop. We are also of the opinion that a preponderance of evidence is to the effect that the policeman preceded the conductor in going to the rear of the car, and

that the plaintiff had already fallen off before the policeman had left the car. Under these conditions, it is impossible to conclude that it was the conductor who pushed the plaintiff off the rear platform.

In Wagner vs. New Orleans Ry. & L. Co., No. 8698 of the docket of this court, the act of negligence charged was that the conductor had pushed the plaintiff off of the car, as in the instant case, and for lack of evidence in the cited case, as in this one, judgment was rendered for defendant.

A carrier is not liable for injuries sustained by a passenger from rudeness, crowding or jostling of another, nor from injuries due to the negligent or wilful act of another, unless the carrier or its agents or employees are given an opportunity to prevent it. It has also been frequently held that a passenger who was pushed from the step by another passenger could not recover under the contention that the carrier was negligent in permitting the car to become crowded. Authorities in support of these rulings are as follows: Fanizzi vs. N. Y. & Q. C. Ry. Co., 99 N. Y. S. 281; Wood vs. Pa. R. T. Co., 104 Atl. 69; Eaton vs. N. Y. & N. H. & H. R. Co., 116 N. E. 815; McGilvary vs. Boston El. Rd., 108 N. E. 116; Marr vs. Boston & M. Rd. Co., 94 N. E. 692.

It was held in the case of Va. Ry. & P. Co. vs. McDemmich, 86 N. E. 744, that the carrier was not liable in a street car fracas on the theory that the action of the fellow-passenger was unexpected and the employee of the company unable to afford protection to plaintiff.

There are only issues of fact involved in this case. Plaintiff has failed to meet the burden imposed on him to prove, with reasonable certainty, the allegations of his petition. On the other hand, defendant's theory of the accident appears to us to be supported by a preponderance of evidence, justifying the judgment of the trial court.

It is, therefore, ordered, adjudged and decreed that the judgment herein appealed from be and the same is hereby affirmed at plaintiff's costs in both courts.