Nathan Rotche, Appellee, v. Buick Motor Company, Appellant.

Gen. No. 35,460.

Opinion filed June 15, 1932.

A. D. WEAVER and KREMER, BRANAND & HAMER, for appellant; C. W. GREENFIELD, of counsel.

ALFRED ROY HULBERT, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought an action on the case against Buick Motor Company and Cicero Buick Sales Company, defendants. Upon trial the jury returned a verdict for $20,000 against both defendants and in favor of plaintiff. Subsequent to the verdict and before judgment, plaintiff gave defendant, Cicero Buick Sales Company, a covenant not to sue for a consideration of $2,500, and upon motion of plaintiff, the suit was thereupon dismissed as to that defendant and judgment entered against Buick Motor Company, the appellant herein, for $17,500.

The facts, so far as they are essential to a determination of the issues involved, disclose that on August 13, 1929, plaintiff purchased a Buick passenger sedan from the Cicero Buick Sales Company. He had previously driven Ford and Packard automobiles, but was inexperienced in operating a Buick. When the car was delivered, plaintiff received instructions as to the driving and operation thereof. Thereafter, he drove the car several hours after work on various days, and on Sundays and Saturdays. Prior to the accident, plaintiff had damaged the fenders in going into his garage, and also knocked off two hub caps on the right wheels, and brought the car back to the Cicero Buick Sales Company for these repairs. It is also charged that plaintiff had been in a collision with a taxicab prior to this accident, but that assertion is denied by him. Prior to the accident, the speedometer of the car showed a mileage of about 600 miles.

On Sunday, September 8, 1929, plaintiff, together with his son, aged 10, drove to Libertyville, about 25 miles from Chicago, and on the way back was proceeding on the Rand Road coming toward the city at a rate of about 35 miles an hour. Just before the accident, plaintiff noticed a car about 200 feet ahead of him flash its stop light, and as he applied the brake on his car to slacken the speed, he noticed his car turn to the

right. According to his testimony, he thereupon turned the steering wheel to the left with both hands, put his foot all the way down on the brake and then, in his own language, "all of a sudden it was right over," and he remembered nothing that happened thereafter. The evidence discloses, however, that his car swerved to the right off the road, over a three-foot dirt shoulder on the road, striking a culvert, going into a ditch about four feet deep and some 16 feet beyond before it stopped. Generally speaking, the car was a total wreck and plaintiff was severely injured.

Two principal grounds are urged for reversal: (1) That there is no evidence to support the verdict, and (2) that the Buick Company, as manufacturer of the automobile, is not liable for injuries to the ultimate user who purchased it from a middleman, for defective assembly of the brake mechanism.

As applicable to the first proposition, the salient question of fact presented to the jury was whether the proximate cause of the injury resulted from defective assembly of the brake on the left front wheel of the car. It is plaintiff's contention that the clevis pin, a steel rod or bolt with a shoulder on one end and a hole on the other, through which a cotter key or pin is inserted for security and designed to keep the cable attached to the brake assembly, was improperly assembled, and that as a result thereof the cotter pin which had not been properly spread, permitted the clevis pin to work out of position, causing the brake mechanism in the left front wheel to become inoperative. Upon this question, plaintiff produced the testimony of several witnesses who examined the car after the accident. The first of these was John J. Walsh, owner of a garage, who was called to tow the wrecked car into the shop immediately after the accident. In preparing to tow the car to his garage, Walsh found the cable hanging loose, and the cotter pin and clevis pin missing. His mechanic later found the same situ-

ation and also discovered other loose cotter pins which had not yet become detached but could be lifted out with the fingers in and about the left front portion of the chassis. The car was subsequently removed to a garage in Chicago, and it was there likewise discovered that several other cotter pins were loose in and about the brake mechanism. David H. Greenberg, plaintiff's brother-in-law, arrived within a half hour after the accident and inspected the car on the prairie before it was removed. He observed the cable hanging loose, the clevis and cotter pins missing. It is suggested by defendant's counsel that Greenberg may have removed these accessories, but Greenberg states his inspection was made in the presence of numerous people. Plaintiff testified that the brake had been working perfectly all day and for three weeks prior to the accident. It also appears reasonably clear from the evidence that none of the parts surrounding the left front brake mechanism was in any way damaged by the accident; that the heavy frame member alongside of the cable of which the clevis and cotter pins are integral parts, below and to the right of the cable, the heavy portion of the axle underneath the cable, the drag link or steering arm below the cable, the drum of the wheel and brake assembly to the left of the cable, and the fender, bracket and braces above the cable were undamaged in any particular. Plaintiff adduced these facts before the court and jury to rebut the inference that the clevis and cotter pins may have been forced out of place by reason of the crash of the car after it left the highway. After the car had been removed to Chicago, plaintiff notified defendants for the purpose of giving them an opportunity to inspect the damaged car, but apparently no inspection was made by them.

It appears, however, that the systematic and usual inspection of the car was made by the Buick Motor Company before the car left the factory, and that sub-

sequent inspections were made by the sales agency from whom plaintiff purchased the automobile. This evidence was introduced to rebut the testimony of plaintiff's witnesses upon the question as to whether there was a defect in the assembly of the car which proximately caused the accident.

Defendant earnestly contends that there is no specific proof of any defect in the assembly of the brake mechanism, and that plaintiff's evidence as heretofore summarized amounts to nothing more than surmise or conjecture based upon presumptions or interferences, which are not permitted as against established facts. We have carefully examined the record and are of the opinion that the determination of this very close question of fact was within the province of the jury. There is definite evidence of several loose cotter pins near the alleged defective brake mechanism, and outward indications, as heretofore enumerated, that this portion of the automobile was not injured in any particular. Furthermore, plaintiff's testimony that the car swerved to the right when he first applied the brakes, refused to respond when he turned the steering wheel to the left with both hands and then lurched off the road when he again applied the brakes, furnishes the only plausible explanation of the proximate cause of the accident. As against this, there is defendant's evidence of the inspections made both by the Buick Motor Company and the sales agency. These facts were all presented to the jury and we believe they fairly furnish a basis for the determination of the ultimate inquiry as to the proximate cause of the accident.

The second question presented for review has been considered by the courts of various States, but not by our Supreme Court upon facts pertinent to these. The leading case is *MacPherson v. Buick Motor Co.*, 217 N. Y. 382, in which the defendant manufactured an

automobile and sold it to a retail dealer, who in turn resold it to plaintiff. While the plaintiff was riding in the car, one wheel suddenly collapsed and he was thrown out and injured. The evidence discloses that the wheel was made of defective wood and its spokes crumbled into fragments. The court found evidence of negligence on the part of the Buick Motor Company in that it failed to discover by reasonable inspection the improper construction of the wheel. The court, after reviewing numerous early decisions and later cases dealing with the principle of liability applicable to similar facts, enunciated the doctrine that a manufacturer who sends out an automobile containing defective material is liable to the purchaser for injuries caused thereby, although the car was purchased through an agent of the manufacturer to whom it had been sold.

In an earlier decision, *Olds Motor Works v. Shaffer*, 145 Ky. 616, the defendant had manufactured an automobile which was likewise sold to an agency. One of the members of the firm of agents took the plaintiff and others for a ride. Plaintiff occupied a rumble seat in the rear, and while the car was going uphill, the rumble seat fell off and plaintiff was injured. The Supreme Court of Kentucky found considerable conflict in the evidence upon the question as to whether or not members of the agency knew of the unsafe condition of the car before the accident, and also upon the question of the concealment of the defects by the Olds Motor Works. As in this proceeding, evidence of the insecure method of attaching the rumble seat to the body of the automobile was discovered after the accident. The court held that it is indispensable to the safety of persons using vehicles that they be safely and properly constructed with reference to the use for which they are intended; that the liability of their occupants to injury from defects in material of con-

struction is so great as to place upon manufacturers the duty of exercising a high degree of care in construction and in equipping cars in such a manner as will make them reasonably safe when used with proper care; that when an automobile is defectively constructed it is an imminently dangerous thing to life and limb, because no matter how careful the driver or the occupants may be in its use, or how competent they may be to operate it, they are helpless to protect themselves from undiscovered and unknown defects, and that as a proposition of law an automobile comes well within the class of articles for which the manufacturer may be held liable to third persons for injuries occasioned on account of defective construction.

In *Johnson v. Cadillac Motor Car Co.*, 261 Fed. 878, it appears that plaintiff bought a Cadillac car from the retail dealer who had previously purchased the same from the factory. After using the car from February until July, 1909, plaintiff was driving on a public highway at a reasonable rate of speed when the front right wheel of the car suddenly and without notice broke down. The car turned over and plaintiff was injured. The court held, as a matter of fact, that the automobile was manufactured and assembled and put on the market by defendant with a weak, inadequate and defective wheel thereon, which was the proximate cause of the accident, that the car when put on the market by defendant was dangerous to human life and unsafe for use, and that defendant should, by the exercise of ordinary care, have known this. Cases to the same effect are *Quackenbush v. Ford Motor Co.*, 153 N. Y. S. 131, and *Ford Motor Co. v. Livesay*, 61 Okla. 231, 160 Pac. 901.

In the case of *Colbert v. Holland Furnace Co.*, 241 Ill. App. 583, which was affirmed in 333 Ill. 78, plaintiff recovered a judgment for personal injuries from a fall resulting from the collapse of the support of a register

or grating installed with a furnace in her home. The grate had been placed in a floor and supported by thin pieces of wood which gave way when plaintiff stepped thereon and she fell through and was injured. The defective construction was not discovered until after the accident. We there held that there was ample evidence from which a jury could reasonably find that such support was insufficient for the use to which the grate as a part of the floor would reasonably be subjected, and affirmed the judgment entered by the trial court. The contention was made in the *Colbert* case, as here, that the happening of the accident some 13 months after the work was completed affected the question of defendant's liability, but it was held, as stated in the opinion, that reasonably safe construction contemplates continued safety subject to ordinary wear and tear or defects incident to lapse of time, and that if the construction is such that danger may be anticipated therefrom by reason of its defects, it is imminent, even though it does not occur immediately or soon after use.

Defendants, while not conceding the doctrine hereinabove discussed to be the settled rule in this State, earnestly contend that there is a difference in principle between defects in construction and defective assembly. They argue that when a manufacturer uses inferior and defective material in construction, the defect can be charged only to the manufacturer, and no matter through how many hands the car may pass, the defect and the consequent weakness of the car continue to exist until, through weakness, the part gives way and possibly causes serious injury, but that in case of a defect in assembling parts which in themselves are free from defects and entirely suitable for the purpose for which they are intended, a different question arises; that a car might be in perfect condition so far as assembly is concerned when it leaves the factory,

but in transportation and other handling before and after it reaches the hands of the dealer, the assembly of the car may become so disarranged as to make it defective, and that liability in such event should rest upon the dealer.

Defendant's counsel states that they have been unable to find any case in which this precise question was involved, but cite *Breck v. Rollaway Motor Co.*, 22 Ohio App. 79, 155 N. E. 147, as having at least some bearing upon the question. In that case it was held that the manufacturer of the steering wheel was not liable for injuries caused by reason of the wheel coming off, in the absence of evidence that the wheel was inherently defective. Two theories were there advanced as to the proximate cause of the accident; one that the pin by which the wheel was attached to the steering post may have been dislodged weeks before the accident by the jarring of the car, and the other that the wheel may have been loosened through a misfit between it and the disk. The court in its opinion said that one of these theories is as good as the other, but that the evidence did not raise any probability of the wheel becoming detached by reason of any inherent defects in its construction. Whatever the rule may be in Ohio with reference to submitting the case to the jury, the established doctrine in this State is that where there is some evidence fairly tending to support plaintiff's theory of the case, the court is justified in allowing the evidence to be submitted, and in the instant proceeding, we are of the opinion that the evidence heretofore summarized justified the court in submitting the questions of fact for the jury's consideration.

In the case of *Quackenbush v. Ford Motor Co.*, *supra*, the court in its opinion employed language which would seem to indicate that they considered the manufacturer of an automobile liable for negligently assembled parts as well as defective material, and

upon principle we see no distinction between the two contingencies. The doctrine of liability is based upon the care which the manufacturer owes the user of the car, and the logic of the doctrine would seem to us to require protection to the purchaser against both defective material and defective assembly, because either defect, if it constitutes the proximate cause of the injury, is an omission of the duty upon which the doctrine is founded.

Other rulings complained of have been considered, but no error has been found in them.

For the reasons stated, the judgment should be affirmed.

*Affirmed.*

HEBEL, P. J., and WILSON, J., concur.