## GORDON v. BATES–CRUMLEY CHEVROLET CO. et al.*

### ANDERSON v. SAME.
### No. 4932.

Court of Appeal of Louisiana. Second Circuit.

Jan. 9, 1935.

224

Irion & Switzer, of Shreveport, for appellant Chevrolet Motor Co.

John C. Hollingsworth, of New Orleans, and Blanchard & Pyburn, of Shreveport, for appellant Bates-Crumley Chevrolet Co.

Harry V. Booth and Hendrick & Hendrick, all of Shreveport, for appellees.

TALIAFERRO, Judge.

The Chevrolet Motor Company, a New Jersey corporation, in the year 1933, sold and delivered to its dealer and distributor, the Bates-Crumley Chevrolet Company, Incorporated, of Shreveport, La., a new Chevrolet sedan automobile, which the dealer company, on September 30, 1933, sold and delivered to Mrs. E. G. Anderson, one of the plaintiffs in this case. After the car had been driven by Mrs. Anderson in and about the city of Shreveport for approximately 600 miles, she, pursuant to the service policy of the manufacturer and dealer, returned the car to the Bates-Crumley Company on October 9, 1933, for a check-up and inspection. At that time she informed the representatives of this company that she contemplated driving the car to Memphis, Tenn., several hundred miles distant, and, naturally, wished to know that it was in first-rate mechanical condition. It remained in the possession of this company for several hours and was given the customary tests and inspections to ascertain its mechanical condition, with especial reference to brakes and steering apparatus, and, when restored to Mrs. Anderson, she was assured that its condition was all she desired and such as might be expected of a new automobile. In other words, it was pronounced as being in first-rate mechanical condition. However, it is not specifically shown that the mechanic making the tests and inspections scrutinized the ball and socket assembly in the forward end of the drag link.

On October 10th, Mrs. Anderson, accompanied by her daughter, Miss Thelma Burroughs, and Miss Sarah Bond, in said car, began the trip to Memphis. They arrived there without mishap and, after remaining there four days, they, with Mrs. J. C. Gordon (who is Mrs. Anderson's mother), began the journey back to Shreveport. Mrs. Anderson and Mrs. Gordon occupied the front seat of the car, the former doing the driving. The road was surfaced with gravel. The car was going at a rate not in excess of 30 miles per hour when, on a long tangent, 50 miles south of Memphis and 3 miles north of the village of Como, Miss., suddenly its direction could not be controlled from the steering wheel. It began to zigzag, first to the right, then to the left, again to the right, and lastly to the left, leaving the road and ramming its left front end into an embankment where it rested in a damaged condition. It had then been driv-

en 1,400 miles. Mrs. Anderson and Mrs. Gordon sustained several injuries, the former the more serious. Each instituted suit against the Chevrolet Motor Company and the Bates-Crumley Chevrolet Company, Incorporated, to recover a large amount of damages for their injuries and medical, doctor's, and hospital bills. Mrs. Anderson also sued for the cost of repairing the damages to her automobile. They each pray for judgment, in solido, against the two defendants.

We here quote the salient parts of Mrs. Anderson's original petition which reflect her theory of the case and the cause of the car's sudden and unexpected action immediately prior to the running into the embankment on the roadside, to wit:

"IX. Your petitioner avers that at the time of the occurrence aforesaid there was no apparent reason or cause for said automobile to have performed in the manner above set forth.

"X. Petitioner further avers that the condition of the highway was excellent, the road being smooth and hard, and that the car did not strike any obstruction or depression in the road, or, in fact, any object that could have caused the driver to lose control of the car.

"XI. Petitioner now avers that at the time, above set forth, there were no vehicles approaching in close proximity, nor were there any overtaking vehicles, thus no reason for the driver of the car to have suddenly changed the course of said automobile, and that consequently said automobile was proceeding at the time of the accident in a straight parallel course down said highway.
*   *   *

"XIV. That on inspection of said automobile by the mechanics, employees, agents and owner of the Gammon Motor Company, of Como, Mississippi, it was discovered that the front drag link had become detached from the spindle arm, which had caused the drag link seat, springs and socket to become detached, which parts and attachments were integral and important parts of the steering apparatus of said automobile.

"XV. Your petitioner now avers that the absence of the attachments to the spindle arm directly affects the steering mechanism to the extent that the driver cannot maintain any control whatsoever over the automobile.

"XVI. Your petitioner believes, and therefore avers, that said attachments to the spindle arm became dislodged from their proper position in the mechanism of said automobile just prior to the accident, due to either the fault and negligence of the Bates-Crumley Company, Inc., or to the manufacturer, Chevrolet Motor Company, of Detroit, Michigan, as hereinafter set forth.

"XVII. That the proximate cause of said accident was due to either the negligence and faulty assembling of said automobile by the manufacturer, Chevrolet Motor Company, or the Bates-Crumley Chevrolet Company, Inc., the latter having inspected and serviced said automobile just prior to the accident; or the use of faulty materials or parts placed in said automobile by one, or both, of the defendants, with the result that it could not be controlled and ran into an embankment, causing the damage hereinafter set forth.

"XVIII. Your petitioner further avers that the Bates-Crumley Chevrolet Company, Inc., was further negligent at the time they inspected and serviced said automobile in not having discovered, upon said inspection, that said spindle arm attachments were defective or unstable, or were further negligent in delivering said automobile to your petitioner after its inspection and servicing without having firmly secured said attachments to the steering mechanism of said automobile, for any or all of which reasons the defendants were guilty of gross negligence, causing the loss and damage to your petitioner hereinafter set forth.

"XIX. Your petitioner avers that she was without fault in any way, since said automobile was at all times from the day it was delivered to her by the Bates-Crumley Chevrolet Company, Inc., and after its inspection and servicing, under petitioner, Mrs. Elizabeth G. Anderson's, control and supervision; that said car was not driven or tampered with by any person, nor had it been involved in any accident or any character which could have accounted for the detachment of said spindle arm attachments.

"XX. Your petitioner now avers that the type of automobile purchased by her from the Bates-Crumley Chevrolet Company, Inc., was designed to go sixty miles an hour or better, and that said vendor company and the manufacturer of said automobile knew, or should have known, that a defective, unstable or weak front drag link or attachments to the spindle arm and drag link or their improper assemblage, could be calculated to have caused the very accident that occurred in this case.

"XXI. Your petitioner further avers that had the Bates-Crumley Chevrolet Company, Inc., made a reasonable and proper inspection of said automobile on or about October

9, 1933, they should have discovered the defects or unstable qualities, or improper assemblage, of said front drag link to the spindle arm, drag link seat, springs, socket and attachments thereto, all of which they knew, or should have known, had an important bearing upon the steering apparatus of said automobile and particularly the safety of the persons who drove and operated said automobile, or the safety of persons who may have been guests therein.

"XXII. In the alternative and only in event the court should hold on trial hereof that your petitioner is not entitled to recover from the defendants, or either of them, ex delicto, then in such event your petitioner avers that the defendant, Bates-Crumley Chevrolet Company, Inc., is liable to your petitioner ex contractu, in that they sold your petitioner a new automobile which developed defects when it had been driven approximately 1,440 miles at the time of the accident hereinabove described and impliedly warranted at the time they sold said automobile to your petitioner that the same was fit for the purposes for which it was sold and purchased, and that the breach of this warranty was the proximate cause of the injuries to your petitioner, Mrs. Elizabeth G. Anderson, and the damage to the automobile sustained by your petitioner."

The allegations of Mrs. Gordon's petition are practically the same as those of Mrs. Anderson. She, being a guest of her daughter and having had no contractual relations with either defendant, her suit is restricted to an action in tort, and her allegations only vary from those of Mrs. Anderson in the respects necessary to cover her status as a guest in the car.

The Bates-Crumley Chevrolet Company filed motion in each case to require plaintiff to elect (1) whether she would proceed only against the Chevrolet Motor Company, as manufacturer of the automobile referred to in the suit, under the violation of a claimed duty to plaintiff as to the parts of the product of its manufacture, and the service and inspection furnished by such manufacturer for account of such manufactured product, and such manufacturer only; or (2) whether she will proceed against Bates-Crumley Chevrolet Company, Incorporated, only, for properly claimed specific acts of negligence of a duty owed by that company to her in connection with the claimed inspection and servicing of an automobile and product manufactured by the Chevrolet Motor Company. Before these motions were passed on, the Bates-Crumley Chevrolet Company, under

reservations, filed an exception of misjoinder of defendants in each case; and, in the alternative, excepted to the petitions on the ground that they were vague, general, and indefinite, in that:

"(a) The plaintiff's petition does not set forth specifically what actually caused the accident for which damages are claimed.

"(b) It sets forth no relation of this Exceptor to the party manufacturing and producing the automobile claimed to have defective parts.

"(c) It sets forth no duty at law under contract with plaintiff, in Exceptor, Individually, to detect defective parts or defective assembling of an automobile manufactured by another, and not it.

"(d) It does not set forth as a fact the existence of patent defects in an automobile averred to have been inspected and serviced by Exceptor, not for its own account, but for the account of the manufacturer thereof, which patent defects were patent on inspection and service by this Exceptor, not manufacturer of the product.

"(e) It does not set up specifically an act of negligence of this Exceptor, among the many claimed acts of negligence of the manufacturer of the product, alternately claimed negligently manufactured, assembled by the manufacturer, or containing defective parts in its manufacture."

On the same day these motions and exceptions were filed, the Chevrolet Motor Company, in each case, filed pleas to the jurisdiction of the court on the ground that it was a resident of the state of New Jersey and had no agent for service within the jurisdiction of the district court of Caddo parish. While all these motions, exceptions, and pleas were pending, plaintiffs amended their petitions; Mrs. Gordon, by adding the following:

"1. Petitioner avers that she desires to amend paragraph twelve of her original petition in the following manner, to-wit:

"Your petitioner believes, and therefore avers, that said attachments to the spindle arm became dislodged from their proper mechanism of said automobile just prior to the accident, due to the fault and negligence of the Bates-Crumley Chevrolet Company, Inc., and the manufacturer, Chevrolet Motor Company, of Detroit, Michigan, as hereinafter set forth.

"2. Petitioner avers that she desires to amend paragraph sixteen of her original petition in the following manner, to-wit:

"That the proximate cause of said accident was due to the negligence of the manufacturer, the Chevrolet Motor Company, of Detroit, Michigan, and the Bates-Crumley Chevrolet Company, Inc., in either having placed defective parts in the said car or having improperly and inadequately attached or tightened the said parts and/or in not making the proper inspection to discover the defective condition of said car, with the result that the said car could not be controlled and ran into an embankment, causing the damage hereinafter set forth."

And Mrs. Anderson, by adding the above two quoted paragraphs from Mrs. Gordon's supplemental petition, plus the following:

"3. Petitioner avers that she desires to amend paragraph twenty-two of her original petition in the following manner, to-wit:

"In the alternative and only in the event the court should hold on trial hereof that petitioner is not entitled to recover from both defendants, ex delicto, then in that event, your petitioner avers that both defendants are liable unto petitioner, in solido and ex contractu, for this:

"That the defendant, Chevrolet Motor Company, warranted to the general public, of which your petitioner is a member, by advertisements, in magazines, in newspapers, and in circulars, that all their automobiles are products of the highest engineering skill, are offered to the public complete in every respect, after minute and skillful inspection and free from all defects, and are fit for the purposes for which they were offered to and sold to the public; and that in order to effectuate this, in part, the defendant, Chevrolet Motor Company, required of its sales representative, defendant, Bates-Crumley Chevrolet Company, Inc., that the latter maintain shop service for all automotive products of Chevrolet Motor Company, service free all new Chevrolet cars for a stipulated period, which warranty the defendant Chevrolet Motor Company undertook at the time of and by reason of the said sale of said car to your petitioner; that the defendant, Bates-Crumley Chevrolet Company, Inc., fully aware of and concurring in the warranty of the said Chevrolet Motor Company, did on its own responsibility independently, and in addition to the warranty of the Chevrolet Motor Company, aforesaid, did specifically and impliedly warrant to petitioner that the said automobile purchased by her was free of all defects and was fit for the purpose for which it was sold and purchased, which warranty defendant, Bates-Crumley Chevrolet Company, Inc., undertook at the same time and by the same act as the warranty described herein was undertaken by the defendant, Chevrolet Motor Company; and that the breach of the said warranties aforementioned was the proximate cause of injury to your petitioner and damage to said automobile described in her original petition."

Thereafter, all said motions, pleas, and exceptions were overruled. The cases were then consolidated for further proceedings and trial.

The Chevrolet Motor Company, with reservation of its rights under the plea to the jurisdiction, which had been overruled, excepted to the two petitions on the ground that, as to it, no legal cause or right of action was set out; and, in the alternative, filed a bill for particulars and a motion requiring plaintiffs to elect whether they will proceed against exceptor as manufacturer of the automobile in question under the claimed duty to plaintiffs as to the parts of the product of its manufacture, or whether they will proceed against the Bates-Crumley Chevrolet Company for claimed improper inspection and servicing of said automobile. All these pleas and exceptions were overruled. Both defendants then answered each suit, specially reserving their rights under all motions, pleas, and exceptions which they had previously filed and urged.

The Chevrolet Motor Company admitted its corporate capacity and domicile, as alleged, and the manufacture and sale of Chevrolet automobiles, but in all other respects denied the other allegations of the petitions, not excepting those which affirmatively aver that the car referred to therein was manufactured by this defendant and by it sold to the distributor and codefendant, Bates-Crumley Chevrolet Company, Incorporated.

The Bates-Crumley Chevrolet Company denied generally the allegations of plaintiffs' petitions, not excepting those to the effect that it inspected and checked over the car to ascertain its mechanical condition when it was returned by Mrs. Anderson for that purpose after being driven by her for about 600 miles. This defendant affirmatively alleges that said car was not sold by it to Mrs. Anderson, but to her husband, who was head and master of the community of acquêts and gains existing between them. The notarial act of sale, however, is to Mrs. Anderson. She is described therein as the purchaser. This defendant also avers that, if any part of the steering apparatus of said car was detached, or became disengaged, pri-

or to the accident, such was not caused by any negligence on its part or from any breach of any obligation it was due to plaintiffs, and denies that such parts, if any, found detached after the accident, were parts of said automobile visible as to their security in assembly to this defendant on inspection and servicing under contract warranty, with limitations, inspection provisions, and service obligations existing between the purchaser of the car and the Chevrolet Motor Company. This defendant further pleads:

"Further answering your defendant denies all averments as to it contained in said article, and further answering avers and shows that it heretofore and now was and is merely a dealer appointed and selected by the Chevrolet Motor Company, of Detroit, Michigan, a manufacturer of Chevrolet automobiles, and that the automobile averred involved in this suit and claimed accident was manufactured by the Chevrolet Motor Company and by it assembled, and that your defendant did not manufacture, nor assemble said automobile. Further, that the manufacturer of the said automobile having appointed your defendant as its dealer in the territory in and about Shreveport, did as part thereof theretofore have printed and published said manufacturer's advertisement and informed thereby this plaintiff and the general public that the Chevrolet Motor Company was the manufacturer of said automobile, and that the Chevrolet Motor Company, in so manufacturing said automobile and others of similar kind for sale, furnished and had prepared by it for delivery to purchasers of Chevrolet automobiles and over its signature the following printed agreement between the manufacturer and the actual purchaser of said automobile, to-wit:

"(a) Owner's Identification Card

"(b) Owner's Service Policy

"(c) New Car Conditioning Report

"(d) Warranty of Manufacturer to Purchaser

"Further answering, your defendant shows that as distributor for said manufacturer, and in accordance with said manufacturer's advertisements nationally distributed and brought to the knowledge of this plaintiff, your defendant as to the new car sold by said manufacturer through this defendant by the husband of Mrs. Elizabeth G. Anderson, this defendant did comply with the provisions in the new car conditioning report on the said automobile, and did comply with the service provided in the owner's service policy for account of said manufacturer, and your defendant sets up and shows that therein it acted for account of said manufacturer, and not for itself individually, and that it was guilty of no negligence in performing any of the service performed by it as above set forth.

"Further answering, your defendant sets up and shows that as dealer and distributor for the Chevrolet Motor Company, it owed no duty to said Chevrolet Motor Company, this plaintiff, or any other plaintiff, to take down and examine any hidden parts of said automobile, the method of assembly thereof, or the tensile strength and complete securing of said hidden parts of said automobile, and that not being the manufacturer of said automobile, its inspection of said automobile was either for account only of the Chevrolet Motor Company, as the principal in the sale, or it was under obligation only to inspect exposed portions of said completely assembled automobile and to use ordinary care and caution in so doing, and your defendant sets up and avers that in such inspections and in all such service it did use ordinary care and caution and denies that it was guilty of any negligence."

Both defendants, in the alternative, also set up that Mrs. Anderson and Mrs. Gordon were each guilty of negligence, barring recovery, in that the former, acquiesced in by the latter, did drive said automobile over graveled roads, in a generally poor condition, many miles on the trip to Memphis and return therefrom, and in so doing, if any part of the said automobile became loose, it was due to the continuous jarring of such operation, and that such operation thereof over such roads in such rough condition contributed to, if it did not cause, the accident complained of; or, alternatively, the condition of said roads caused lack of control of the car at and pending the accident complained of.

The Bates-Crumley Chevrolet Company also denied the allegations of the supplemental petitions filed by plaintiff and then pleaded:

"And now comes the Bates-Crumley Chevrolet Company, Inc., made defendant herein, and shows to the court that it purchased the automobile described in plaintiff's petition from the Chevrolet Motor Company, of Detroit, Michigan, which automobile was manufactured by it, and that under its agreement with said manufacturer said automobile was delivered to it in the State of Louisiana for sale and use in the State of Louisiana, and under said agreement Chevrolet Motor Com-

pany warranted the said automobile as fit and suitable for use by the plaintiff or any other purchaser as well as the purchaser of the said automobile.

"That said Chevrolet Motor Company, a corporation domiciled in Detroit, Michigan, and having an agent for service in the State of Louisiana, having warranted the Bates-Crumley Chevrolet Company, Inc., under contract with said manufacturer, that the Bates-Crumley Chevrolet Company, Inc., now calls the Chevrolet Motor Company in warranty herein, to the end that it may be a party to this suit, and that it may defend your respondent against all averments of defect in said automobile, its assemblage or class of service, and the class of inspection."

Any contractual relation and any warranty obligations between this defendant and either plaintiff is specially denied.

To the calls in warranty, the Chevrolet Motor Company filed exceptions to the court's jurisdiction ratione personæ and of no cause and no right of action. The latter exception was sustained and the calls in warranty dismissed.

The cases, upon plaintiffs' application, were tried by jury who, by a vote of nine to three, rendered verdicts as follows: In favor of Mrs. Anderson for $7,000, and in favor of Mrs. Gordon for $4,000. After unsuccessful efforts to secure new trials on part of both defendants, judgments were rendered and signed by the court in keeping with the jury's verdicts. Both defendants appealed. The Bates-Crumley Chevrolet Company also appealed from the dismissal of its calls in warranty.

The Chevrolet Motor Company, as alleged, was incorporated under the laws of the state of New Jersey. Its domicile is in that state. It operates a factory for the manufacture and sale of Chevrolet automobiles, etc., in the city of Detroit, in the state of Michigan. It has many dealers or distributors of its products in the state of Louisiana, is authorized to do business therein, and has named certain persons in the city of New Orleans, parish of Orleans, as its agents for service of judicial process. In the present cases, service of process was had on one of these agents.

■ Plaintiffs' efforts to hold the Chevrolet Motor Company as a defendant in these cases, instituted in Caddo parish, the domicile of the Bates-Crumley Chevrolet Company, if not vulnerable for any other reason, must prevail or fall upon the soundness or lack of soundness of their contention that defendants are solidarily bound to indemnify them for the damages and losses sued for. It is certain that, if the Chevrolet Motor Company is properly impleaded, the right to do so is predicated entirely upon the provisions of paragraph 6 of article 165 of the Code of Practice, which authorizes suits against persons bound jointly or in solido to be instituted at the domicile of either obligor, because its domicile is without the state of Louisiana; the residence of its Louisiana agents for service is in the parish of Orleans; the alleged tort occurred in the state of Mississippi. Tort-feasors are in solido bound to repair the damages flowing from their illegal acts. Coreil v. School Board, 160 La. 1011, 107 So. 783.

In approaching the question of jurisdiction of the lower court over the Chevrolet Motor Company, in either case, in logical order, we have to first determine whether plaintiffs have any cause of action against the Bates-Crumley Company, under the allegations of their petitions, and the testimony bearing upon that issue. If this company is not responsible to them to any extent for the damages caused by the accident, then it follows that their suits against the Chevrolet Motor Company must fall because improperly instituted in the district court of Caddo parish. If the Bates-Crumley Chevrolet Company is eliminated from the cases as a defendant, because of nonliability, it follows that the pleas to the jurisdiction filed by the Chevrolet Motor Company must prevail. These pleas are strenuously urged and insisted on in brief and oral argument in this court.

■ The Bates-Crumley Chevrolet Company had no part in the manufacture of the car sold Mrs Anderson. The completely assembled and organized product was sold by the manufacturer to it and was in turn sold by it to Mrs. Anderson. There was no privity of contract between Mrs. Anderson's vendor and Mrs. Gordon. For all legal and practical purposes, she was a stranger to the transaction. The fact that the Bates-Crumley Chevrolet Company inspected and rechecked the mechanical condition of the car for Mrs. Anderson, regardless of any other effect such may or may not have produced, has no bearing upon the case of Mrs. Gordon. That was done out of its obligation as seller and in fulfillment of the service policy required by the parent company of all of its distributors. The original relationship between the parties as vendor and vendee was not affected thereby, and the seller's liability as such to Mrs. Anderson or the public was to no extent enlarged or increased through such act, unless therefrom

hidden defects in the car were discovered, but not disclosed by it. Civ. Code, art. 2545. This we have found not to be the case. The existence of such, under the facts of the case, cannot be presumed.

An automobile is not per se an intrinsically and inherently dangerous instrumentality. It may be made so in incompetent hands. When sold by a dealer or distributor, when new, after having been subjected to standard, reasonable, and usual tests and inspection, to determine its mechanical condition, as was done in this case, and having been found, after such tests and inspection, to be in good mechanical condition, the seller cannot, in such circumstances, be held responsible for damages to strangers resulting from hidden and latent defects therein. His responsibility, if any, is limited to the person who has purchased the car. He has breached no contract with third persons, and, the instrumentality being not inherently and intrinsically dangerous to life or limb, he has not violated any duty to the public imposed by law. In such case a stranger cannot take advantage of a breach of warranty, express or implied, if any there be.

We have been cited to only one case in our jurisprudence which directly bears upon the questions discussed. That is the case of Moore v. Jefferson Distilling & Denaturing Co., reported in 169 La. 1162, 126 So. 691, 693. The facts of that case, briefly, are these: One Putzell purchased steel drums from defendant, who had not manufactured them, and sold them to the Marland Refining Company. After being imperfectly inspected, they were shipped directly by the purchaser to the Lucas E. Moore Stove Company, at Southport, La., to be filled with gasoline, under a contract with the Marland Refining Company. While the drums were being unloaded, it was discovered that some of them contained a dark, gritty deposit which colored the gasoline when mixed in a test tube. While examining the interior of one of the drums through the bunghole, Mr. Putzell imprudently applied a lighted match to the hole, causing an explosion which fatally injured Lucas E. Moore. Suit was instituted by the widow of deceased, in her capacity as tutrix to her minor child, to recover damages from defendant on the ground of negligence in selling drums, supposed to have never been used, but which in fact had been used and contained small quantities of explosive liquids. In reversing judgment of the Court of Appeal, Orleans Circuit (12 La. App. 405, 123 So. 384), the Supreme Court said:

"The Jefferson Distilling & Denaturing Company did not manufacture the drums, and hence its duty and consequent liability are to be gauged by the fact that it was a mere vendor of the article.

"We are dealing here with a case in which privity of contract is absent. If recovery is had by plaintiff, it must be predicated upon the basis of a duty imposed by law.

"In Standard Oil Co. v. Murray (C. C. A.) 119 F. 572, 575, the court said:

"'The acceptance by a vendee of a thing sold, except under special circumstances, relieves the vendor from liability to a stranger for an injury resulting to him from the negligent manufacture or construction of the thing sold. Bragdon v. Perkins-Campbell Co., 30 C. C. A. 567, 87 F. 109, 66 L. R. A. 924; Necker v. Harvey, 49 Mich. 517, 14 N. W. 503.

"'The duty owing to the public, for breach of which one injured may recover, has respect to and is limited to instruments and articles in their nature calculated to do injury, such as are essentially and in their elements instruments of danger, and to acts that are ordinarily dangerous to life and property. If the wrongful act be not imminently dangerous to life or property, the negligent vendor is liable only to the party with whom he contracted. McCaffrey v. Manufacturing Co., 23 R. I. 381, 50 A. 651, 55 L. R. A. 822, 91 Am. St. Rep. 637. Petroleum oil, as we held in Goodlander Mill Co. v. Standard Oil Co. (C. C. A.) 63 F. 400, 27 L. R. A. 583, supra, and in Railway Co. v. Ballentine, 28 C. C. A. 572, 84 F. 935, is not a dangerous agency within the rule that he who uses it does so at his peril. It is dangerous only when in considerable quantities it is brought into contact with fire. That is a fact of common knowledge, with which every one is chargeable.'

"See, also, Fidelity & Casualty Co. v. Paraffine Paint Co., 188 Cal. 184, 204 P. 1076; Stone v. Van Noy R. News Co., 153 Ky. 240, 154 S. W. 1092; Glaser v. Seitz, 35 Misc. 341, 71 N. Y. S. 942.

"We fail to find any proof in the record in this case that the drum that exploded with fatal result to decedent was 'intrinsically or inherently dangerous' to life or limb."

■ We think this case decisive of the lack of right of action in Mrs. Gordon to hold Bates-Crumley Chevrolet Company responsible in damages for her injuries. There is no responsibility in that company to her for such damages. This being true, the exception to the jurisdiction filed by the Chevrolet Motor Company should have been sustained.

When the damaged automobile of Mrs. Anderson was examined by a mechanic a very brief time after and at the place of the accident to determine, if possible, the cause thereof and the extent of the injuries thereto, it was found that the drag link or steering connection rod had become disengaged from the ball of the third arm (which is attached to the left front wheel) and that the spring, spacer, and seats which, with the aid of the screw plug in the front end of the drag link, held this ball in place in the orifice or opening under the forward end of the drag link, were all absent. The drag link was connected at the rear end to the Pitman arm, and in other respects the steering apparatus of the car was intact, though to some extent out of line. None of the parts was found about the car, where they would be expected to be if they had been in place at the time of impact. A spacer, the last part that would have come out of the drag link, was found about 100 feet north of the place of impact. The plug which screws in the end of the drag link was in place.

The gravamen of Mrs. Anderson's petition is that the small metal parts, found absent from their housing at the end of the drag link, were inadequately or improperly placed therein originally by the manufacturer, or were of defective material, and that they, by the normal operation of the car and use of the steering attachments, worked out of their proper place and fell to the ground, leaving nothing to hold the ball in place; that the drag link fell, or was in some manner knocked off of the ball and rested upon the cross member which ties the wheels together; and that, because of the disconnection of these indispensable factors in the correct steering of the car, it became uncontrollable from the steering wheel, performed the antics related by Mrs. Anderson, and finally collided with the embankment, causing the damages and injuries for which indemnification is sought. The incorporation of these parts in the car negligently, or they being of defective material, is the basis upon which plaintiff seeks to hold the Chevrolet Motor Company responsible in damages. The failure on the part of Bates-Crumley Chevrolet Company to discover the existence of the parent company's negligence in the respects mentioned is the basis of her hope to hold the seller company responsible for the damages sued for.

The weight of authority clearly preponderates in favor of plaintiff's contention that the manufacturer of an automobile is responsible in damages to the purchaser thereof from one of its dealers and distributors, because of defects in parts and material, or incompetent assemblage or workmanship therein. In such case it has been often held that the manufacturer owes a duty to the public to see that defects in the machine, or the material carried into its construction, possible for it to determine, shall be entirely eliminated. If the defect could have been discovered by the exercise of the utmost human skill and foresight, it is negligence not to have discovered it. Negligence is imputed when the machine fails for any of said reasons. Berry on Automobiles, Vol. 2, p. 1504 et seq.; Huddy, Cyclopedia of Automobile Law, Vol. 9, 10, p. 315; Cohen v. Motor Truck Corporation, 240 App. Div. 18, 268 N. Y. S. 545; McPherson v. Buick Co., 160 App. Div. 55, 145 N. Y. S. 462; Quackenbush v. Ford Motor Co., 167 App. Div. 433, 153 N. Y. S. 131; Johnson v. Cadillac Co. (C. C. A.) 261 F. 878, 8 A. L. R. 1023.

In all these cases it was established to the satisfaction of the judge or jury that the injury to the purchaser was due to original defects in construction, material, or workmanship, of the car in question. In none of these cases was the dealer joined as a defendant, as was done in the present case. See George v. Shreveport Cotton Oil Co., 114 La. 505, 38 So. 432, 434, wherein the court said: "We are of the opinion that the doctrine announced in [Kellogg Bridge Co. v. Hamilton] 110 U. S. [108], 3 S. Ct. [537], 28 L. Ed. [86] (the same as that expressed by Laurent) is conservative, and that a manufacturer who disposes of the things which he himself has manufactured can properly and legitimately be held presumptively to a knowledge of the qualities of the things he sells; and we apply that presumption to the case before us."

As a rule; the law governing the obligations of the manufacturer and dealer or seller in such a case is not the same. The relation of vendor and vendee is governed by different legal principles from those applicable to the manufacturer and the person who purchases his products, relying implicitly upon its representations to the public as to the high character of material and workmanship employed in the construction of such product. The manufacturer is subject to rules much more strict than is the seller.

In the present case, the measure of responsibility of Bates-Crumley Chevrolet Company, as a vendor, to Mrs. Anderson, as a purchaser, is fixed by the articles of the Civil Code. The relation of vendor and vendee arose between them when the title of the car passed. The sale was begun and completed in

Louisiana and is, therefore, in all of its aspects and effects, controlled by its laws. For us to intelligently pass upon plaintiff's suit against her vendor, it is not necessary that we pass upon the merits of her suit against the Chevrolet Motor Company.

A sale of personal property, such as automobiles, and other machinery, only superinduces a right in the buyer to recover damages caused by vices in the thing sold, when such vices are known to the seller and he omits to declare them. Civ. Code, art. 2545; Christie & Lowe v. Penn. Iron Works Co., 128 La. 208, 54 So. 742.

In other words, the seller's action in withholding from the purchaser the knowledge of vices in the thing sold is per se bad faith and equivalent to fraud. The reason for the right to recover damages traceable to such vices is obvious. Knowledge of the existence of hidden defects is not imputed to the seller, as it is to the manufacturer.

■ If any of the parts which hold the ball of the third arm of an automobile in the socket of the drag link were absent from plaintiff's car, or were unskillfully and improperly assembled therein, when it was sold to plaintiff, or when rechecked and reinspected after being driven 600 miles, such condition was visible on inspection and should have been discovered when inspected before and after being used. If any of such parts were of defective material or were defective because of lack of skill or adequate inspection in the process of manufacture, such latent defects were not discoverable on inspection or through usual and customary tests. The existence and ultimate effects of such vices could and would only be revealed by use of the automobile. Plaintiff does not contend that these parts were wholly absent when the car was sold to her. It is conceded that some, or all, of them were therein at the time of sale. She affirms that the spacer found some 100 feet back of the place of accident fell from its place in her car. If this be true, then it follows, by strong inference at least, that the other parts were at one time in the car; and the fact that the steering assembly operated perfectly for 1,400 miles or more, and until a second or two prior to the accident, strongly, if not convincingly, supports the conclusion that, if either theory of plaintiff is correct, it is that these missing parts, some or all, were inherently defective and vicious to the degree that they were easily worn or disintegrated, or, for some other reason, ceased to remain intact and were shaken from their proper position and connections, causing the disengaging of the ball and socket of the steering apparatus.

Plaintiff's theory of the cause of the disengagement of the ball from the socket in the drag link is in the alternative. She has not proven which, if either, theory is correct. It is improbable that both are correct. To hold that her vendor is responsible to her for her injuries and losses, caused from the accident, we would have to hold that she has discharged the burden of proving that the accident was caused from vices in her automobile visible to customary and usual inspection thereof, either at the time of sale or inspection thereafter. We do not think she has done this.

■ The seller of a machine, manufactured and sold extensively by a nationally known company employing skilled engineers and artisans and material of the best grade, is not required, out of a duty as vendor, to dismantle and disengage the intricate and scientifically assembled parts of such machine, before selling it, in order to absolve himself from responsibility for damages resulting from defects therein not visible on usual, customary, and careful inspection.

We are clear in the opinion that no liability attaches to Bates-Crumley Chevrolet Company for the damages sued for by Mrs. Anderson, and, this being true, her suit against the Chevrolet Motor Company was improperly instituted in the district court of Caddo parish, which is without jurisdiction of the cause, so far as relates to that company.

Having reached the conclusion that Bates-Crumley Chevrolet Company cannot be held liable to either plaintiff for the damages sued for, and that the pleas to the jurisdiction filed by the Chevrolet Motor Company are well founded, we are relieved from the task of having to pass upon the other multitude of exceptions, motions, and defenses with which the record bristles.

For the reasons herein assigned, the judgments of the lower court overruling the exceptions to the jurisdiction filed by the Chevrolet Motor Company are reversed, annulled, and set aside, and there is now judgment sustaining said exceptions and dismissing plaintiffs' suits against this defendant as of nonsuit; and for said reasons there is further judgment in favor of defendants, annulling, reversing, and setting aside the judgments against both defendants herein, and rejecting plaintiffs' demands as against Bates-Crumley Chevrolet Company, Incorporated.

It is further ordered that each plaintiff pay the cost of her own suit.