146 So.2d 29 (1962)
Sidney P. SAMAHA
v.
SOUTHERN RAMBLER SALES, INC. and American Motors Corporation.
No. 293.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
Rehearing Denied November 12, 1962.
*30 Lemle & Kelleher, Carl J. Schumacher, Jr., Dermot S. McGlinchey, New Orleans, for defendant-appellant.
John D. Lambert, Jr., Walter J. Landry, New Orleans, for plaintiff-appellee.
Peter H. Beer, New Orleans, for defendant-appellee.
Before MILLER, VIDRINE and CUTRER, JJ.
MINOS D. MILLER, Jr., Judge pro tem.
Plaintiff, Sidney P. Samaha of Terrebonne Parish, Louisiana brought suit against Southern Rambler Sales, Inc. of New Orleans, Louisiana, and American Motors Corporation, in solido, for damages for personal injuries together with a contractual demand arising out of certain alleged defects in an automobile. Houston Fire & Casualty Company, compensation insurer of plaintiff's employer, filed a petition of intervention to protect its rights in the event plaintiff urged a claim against it in compensation. No appearance was made by the intervenor in either the trial court or in this court, and thus the intervention will be regarded as abandoned. During the course of the trial, Southern Rambler Sales, Inc. was released by the plaintiff and withdrew from the case. The trial court rendered judgment in favor of plaintiff and against defendant, American Motors Corporation, in the sum of One Thousand Six Hundred Sixty-Five and 54/100 Dollars ($1,665.54) with legal interest and costs, and from the adverse decision American Motors Corporation appeals to this court.
The facts are these: On August 30, 1958, plaintiff bought a 1958 Rambler automobile from defendant Southern Rambler Sales, Inc. The car was manufactured by defendant American Motors Corporation. Shortly after the purchase, plaintiff complained of various alleged defects in the automobile, mostly minor in nature. The tempo of these complaints reached a high point on February 13, 1959, when plaintiff was driving the automobile over the Lacassine Bridge on Louisiana Highway 14 in the direction of Hayes, Louisiana. Plaintiff testified that as he was driving up the incline of the bridge, a rubber support for the driver's seat gave way and a welding post supporting the front seat broke, causing the seat to fall backward. As a result of the collapse of this seat plaintiff was thrown backward and had to use considerable effort to regain control of the car. While attempting to control the car from this position, plaintiff alleged that he strained his back causing injuries and discomfort.
In his petition plaintiff alleged the gross negligence of defendant American Motors Corporation, "in manufacturing the said automobile with hidden defects that caused the said driver's seat to collapse." American Motors Corporation entered a general denial.
In his brief counsel for defendant American Motors Corporation points out that in order to show negligence it was necessary for the plaintiff to introduce testimony that the weld in question was defective, and with this we agree. To that end plaintiff introduced the testimony of two witnesses, name ly, Simon Breaux and Marshall Crowl.
Mr. Breaux lives in Hayes, Louisiana, and runs a cafe and drugstore. Prior to this business he worked as a mechanic repairing automobiles, changing parts, doing body work, etc. He testified that he had done welding for a period of seven or eight years. Breaux stated that on February 13, 1959, the plaintiff had stopped by his store in Hayes and related the details of the accident to him. Breaux testified that when he helped the plaintiff out of the *31 car the driver's seat fell back onto the back seat. He looked at the construction of the seat and in his opinion the welding was not sufficient. He testified that the bracket was only "tack welded" when in his opinion there should have been a solid weld. Breaux testified that subsequent to the accident he examined several other Rambler cars of the same type as plaintiff's:
"Q. Mr. Breaux, you have testified that you have had occasion to see other Rambler automobiles that are similarly constructed?
"A. Yes.
"Q. Would you describe the welding on these particular automobiles that you have seen since?
"A. I have seen several since. The ones that I have seen are welded from one end of the bracket to the other and this particular one was spot welded in three spots on each side and in the center."
Marshall J. W. Crowl of Welsh, Louisiana, witness for plaintiff, testified that he was in the machine shop business and general repairs for farm equipment including welding. He related his experience with acetylene and electric welding and was of the opinion that he was able to spot a good weld as opposed to a bad weld. On February 14, 1959, the day after the accident, plaintiff came to see Crowl about fixing his car. Crowl testified as follows regarding the condition of the seat:
"Q. Would you describe the work that he wanted done, or what he wanted done that he came to see you about?
"A. He had a bracket broke off of the seat, the seat of the car, and he wanted it welded on, which I did.
"Q. Would you describe the automobile which Mr. Samaha brought to you? Would you describe the particular defect that he pointed out to you?
"A. Well, this part was broken. This hinge part where the welds are on this tubular frame it was broken. Its a little upright section and sticks up from there and its got a rivet on it.
* * * * * *
"Q. Now did you observe the particular weld that had broken on the automobile?
"A. Yes.
"Q. Would you describe it to us to the best of your knowledge?
"A. Well, I thought it was very poorly welded, not sufficiently welded.
"Q. Describe it a little more in detail?
"A. Well, it was just kind of a spot daubed in there that looked like some kid might have done it.
"Q. Did the weld appear to be poorly welded or how would you describe it from that standpoint?
"A. Well, I don't think it was enough weld on the parts, it was not welded enough.
* * * * * *
"Q. Would you describe to the Court the type weld you put on this particular bracket or between the bracket and the bar?
"A. Well, I welded with an electric welder and put a full weld all the way around and in between there."
Mr. Crowl testified that he had seen Rambler automobiles since then and that the weld was all the way around or in other words it was more securely welded than this one.
Defendant American Motors Corporation contends that plaintiff failed to prove his case against the manufacturer by a preponderance of evidence. Being content to rest upon its position that plaintiff failed to prove his case by a preponderance of evidence, *32 American Motors Corporation offered no witnesses to rebut plaintiff's proof of its negligence. The trial court, in a short two sentence opinion contained in the body of the judgment, made these findings:
"(1) The car seat bracket was defectively welded and that this was the proximate cause of plaintiff's injuries."
"(2) That the defect was a hidden defect and one for which the manufacturer and not the dealer is responsible. [Gordon v. Bates-Crumley Chevrolet Co., La.App.] 158 So. 223 and cases there cited."
The trial court apparently regarded the complaints as to the various other defects in the automobile complained of by the plaintiff as not having been proved. With this apparent conclusion we agree. We likewise agree with the trial court's finding that the car seat bracket was defectively welded and that this was a hidden defect for which the manufacturer and not the dealer is responsible.
The case relied upon by plaintiff and cited by the trial court in its brief opinion is that of Gordon v. Bates-Crumley Chevrolet Company et al., La.App., 158 So. 223, 230, 231 (affirmed 182 La. 795, 162 So. 624) (1935). In this case the plaintiff had purchased a Chevrolet automobile from the local retail dealer, defendant Bates-Crumley Chevrolet Company of Shreveport, Louisiana. Prior to taking a vacation trip, plaintiff had the car inspected by defendant Bates-Crumley who pronounced it as being in first rate mechanical condition. On the return trip plaintiff's steering mechanism went out of control causing the automobile to crash into an embankment damaging the car and injuring the plaintiff. Plaintiff sued both the local retail dealer and the Chevrolet Motor Company manufacturer in tort for property damage and personal injuries. The trial court rendered judgment against both the retail dealer and the manufacturer. In reversing this finding, the Court of Appeal held that knowledge of the existence of hidden defects is not imputed to the seller as it is to the manufacturer, and reasoned as follows:
"The weight of authority clearly preponderates in favor of plaintiff's contention that the manufacturer of an automobile is responsible in damages to the purchaser thereof from one of its dealers and distributors, because of defects in parts and material, or incompetent assemblage or workmanship therein. In such case it has been often held that the manufacturer owes a duty to the public to see that defects in the machine, or the material carried into its construction, possible for it to determine, shall be entirely eliminated. If the defect could have been discovered by the exercise of the utmost human skill and foresight, it is negligence not to have discovered it. Negligence is imputed when the machine fails for any of said reasons. Berry on Automobiles, Vol. 2, p. 1504 et seq.; Huddy, Cyclopedia of Automobile Law, Vol. 9, 10, p. 315; Cohen v. Motor Truck Corporation, 240 App.Div. 18, 268 N.Y. S. 545; McPherson v. Buick [Motor] Co., 160 App.Div. 55, 145 N.Y.S. 462; Quackenbush v. Ford Motor Co., 167 App.Div. 433, 153 N.Y.S. 131; Johnson v. Cadillac [Motor Car] Co. (C. C. A.) 261 F. 878, 8 A.L.R. 1023.
"In all these cases it was established to the satisfaction of the judge or jury that the injury to the purchaser was due to original defects in construction, material, or workmanship, of the car in question. In none of these cases was the dealer joined as a defendant, as was done in the present case. See George v. Shreveport Cotton Oil Co., 114 La. 498, 505, 38 So. 432, 434, wherein the court said: `We are of the opinion that the doctrine announced in [Kellogg Bridge Co. v. Hamilton] 110 U.S. [108], 3 S.Ct. [537], 28 L.Ed. [86] (the same as that expressed by Laurent) is conservative, *33 and that a manufacturer who disposes of the things which he himself has manufactured can properly and legitimately be held presumptively to a knowledge of the qualities of the things he sells; and we apply that presumption to the case before us.'
"As a rule, the law governing the obligations of the manufacturer and dealer or seller in such a case is not the same. The relation of vendor and vendee is governed by different legal principles from those applicable to the manufacturer and the person who purchases his products, relying implicitly upon its representations to the public as to the high character of material and workmanship employed in the construction of such product. The manufacturer is subject to rules much more strict than is the seller."
It is to be noted that the judgment against the manufacturer was reversed because its plea to the jurisdiction ratione personnae should have been sustained. Plaintiff brought suit in Caddo Parish when defendant manufacturer had a registered agent domiciled in Orleans. We find the law of the Gordon case applicable to the instant situation. Defendant American Motors Corporation presented no authority to the contrary.
We next consider the question of quantum. The plaintiff was first treated by Dr. Romero of Welsh, Louisiana, who apparently administered conservative treatment. On April 20, 1959, plaintiff was seen by Dr. Irving Cahen, Orthopedic Surgeon, who diagnosed the plaintiff's ailment as a lumbrosacral sprain with an estimated disability period of three months. Plaintiff developed boils over this area as a reaction to the heat treatment administered, but the condition was not regarded as serious. The trial judge awarded $1,665.54, however, the damages were not itemized. Although we agree with the trial judge in his findings and in the general amount awarded, because we have no clue as to how these damages were broken down we itemize the damages as follows:

 1. Welding repair  $ 1.00
 2. Medical expenses  126.12
 3. Pain and suffering  1,500.00
 ____________
 $ 1,627.12.

Accordingly, the judgment of the trial court in favor of plaintiff and against defendant, Amercan Motors Corporation is amended to show damages in the amount of $1,627.12 together with legal interest and all costs, and as amended, affirmed.
Judgment amended and affirmed.