PRICE, Judge.
This is an action in tort in which plaintiff, a mechanic employed by a Ford Truck dealer, seeks to recover damages from the manufacturer and its insurer for personal injuries sustained while he was engaged in repair work on a new truck. Aetna Casualty & Surety Company intervened in the • action claiming reimbursement for the total of workmen’s compensation benefits paid by it to plaintiff, George E. Shanks, Jr. Ford Motor Company and Insurance Company of North America, its liability insurer, were made defendants herein.
Plaintiff alleged that while working as a mechanic for Wray Ford, Inc, in Shreve.port, Louisiana, on May 2, 1966, he was assigned the duty of correcting certain defects in a new pickup truck which had been sold to a customer on April 30, 1966. It was further alleged by plaintiff that while he was standing at the front of the truck performing work on the motor, the truck began moving to the rear. In an attempt to enter the cab to stop its movement with the foot brake, he slipped and was injured when his knee became caught in the door hinge. It was alleged that the truck began to move backward because of the negligence of Ford Motor Company in manufacturing or assembling the truck with a defect in the transmission which allowed the gear to slip from the parked position to reverse.
Defendants filed an answer denying any negligence on the part of Ford Motor Company and alternatively pleaded the special defenses of contributory negligence and assumption of the risk on the part of plaintiff. After trial on the merits the district court rejected the demands of both plaintiff and intervenor, and both have appealed from this judgment.
The evidence disclosed that on the morning of this injury Shanks undertook to make certain repairs to the pickup truck involved herein. A work repair order was given him on which the following complaints by the owner were set forth: (1) Repair noise in valve train; (2) Repair automatic transmission so will hold in park position; (3) Adjust neutral switch.
Shanks proceeded to make these repairs by first installing a new neutral switch to enable the truck to start properly in the neutral gear position. He testified he then checked the truck to determine if the gear would hold in park position. Shanks stated this was done by rocking the truck back and forth with the help of two other men. After apparently concluding that the gear would hold in park position, he repaired a valve lifter in the engine. After completing the installation of the valve lifter, he started the engine and began accelerating the engine by manually controlling the carburetor with a screw driver while standing in front of the truck. A few moments after the engine had been accelerated the truck began to move backwards. Shanks attempted to re-enter the cab to apply the foot brake and in so doing slipped and was injured.
The evidence reflected that Shanks did not use safety blocks to chock the wheels of the truck before racing the engine. It further reflected that these blocks were available in the shop for this purpose. The only evidence pertaining to the use of the emergency brake is that of the plaintiff, *731 who testified that he had' engaged the brake prior to starting the engine.
Plaintiff primarily relies on the holding in the case of Samaha v. Southern Rambler Sales, Inc., 146 So.2d 29 (La.App., 4th Cir., 1962), to establish the negligence against the Ford Motor Company. The Court in that case imposed a high duty of care on manufacturers to see that no defects exist in machines which are placed on the market to be sold to the public. It must be noted, however, that this duty was held to be owed to the public.
The distinction between the Samaha case and this one is that plaintiff in the instant case is not a member of the public insofar as this particular truck is concerned.
The determination of whether or not Ford Motor Company was , negligent depends on the duty of care it owed to this particular plaintiff. The status or relationship between the parties has a direct bearing on the degree of care or duty owed.
In Bergeron v. Greyhound Corp., 100 So.2d 923 (La.App., 1st Cir., 1958), the Court cited with approval the following principles from 65 C.J.S. Negligence § 1 (5), which are pertinent to this case, to-wit:
“What constitutes negligence varies under different conditions; in determining whether negligence exists in a particular case, or whether a given act or course of conduct amounts in law to negligence, all the attendant or surrounding facts and circumstances must be taken into account. An act or omission which would clearly be negligence under some circumstances, or in some situations, might not be negligence under other circumstances and surroundings, or in other situations, and the converse is likewise true. The application of the term ‘negligence’ depends on the situation of the parties and the degree of care and vigilance which the circumstances reasonably impose.
“As used in this connection, the word ‘circumstances’ is comprehensive, and embraces the operation of the forces of nature as far as they bear on, or relate to, the happening of the central event. Each case must depend on, and be decided by, its own particular or peculiar facts and circumstances, in the exercise of common sense and sound judgment; and so varying are the factors which contribute to produce a result that no hard-and-fast rule may find practical application in the great majority of cases.”
In the case at hand the plaintiff was an expert mechanic who was employed by an authorized Ford dealer. Ford Motor Company as the manufacturer must rely on authorized dealers to sell and service the vehicles manufactured by it.
It is a well known fact that at the time automobiles and trucks are delivered to dealers they are not in proper condition to be delivered to the consuming public. Each dealer has what is commonly called “a make ready department” to make final adjustments in the vehicle and to remedy defects found by the customer. In the performance of this function the dealer must employ mechanics who have expert knowledge and training in the care, maintenance and operation of vehicles. The dealer and his employees actually correct defects found in new vehicles on behalf of the manufacturer.
We agree with the argument of counsel for defendant that the duty of care laid down by the court in the Samaha case (this being the controlling law of this State on the duty of care owed by a manufacturer of machinery to the public) can not be held to exist in favor of the employees of an authorized dealer of an automobile manufacturer. This is especially true with respect to defects which are obvious or known to exist by the employee who undertakes the repairs.
Shanks testified that he was informed by one of the employees of Wray Ford, Inc. that after the accident the truck was *732 sent to the transmission shop, and there it was found that it had a defective or broken pawl in the gear shift mechanism which caused the gear to slip from park to reverse while the motor was running.
The evidence in the case convinces us that the difficulty experienced with the transmission of the vehicle involved in this case resulted from an improper linkage adjustment and not from a defective or broken pawl as plaintiff contends.
Defendants called as witnesses the truck department service manager, Paul Kelley, and the general service manager, Guy Lee, each of whom testified that they could find no record of the truck ever having been in their transmission shop for this type of repair. A witness called by plaintiff, Mr. Porter Howard, identified an invoice which disclosed that his garage had actually adjusted the linkage at some later date to correct the transmission trouble complained of. There was no indication of a defective pawl.
We conclude that the difficulty in the transmission of this vehicle on the date of the injury was in the category of repairs or adjustments normally made by the “make ready department.”
The evidence is clear that Shanks knew of the difficulty in the transmission, as it was plainly stated on the service work order form. He further admitted in his testimony that Mr. Kelley, the service manager, told him the owner complained that the truck would not hold in park position.
The contention of plaintiff that he had checked the transmission trouble by rocking the truck and found it satisfactory, was not sufficiently proven by the evidence. Mr. Kelley denied having participated in this procedure, and plaintiff did not produce as a witness the other party who supposedly helped him rock the vehicle.
Having been warned of the complaints of malfunction in the transmission, the action of Shanks in undertaking repair to the motor which required racing the engine without first making certain the transmission had been repaired, or, in any event, chocking the wheels to prevent movement of the truck, was negligence.
Any negligence which might be attributable to Ford Motor Company in manufacturing and shipping the vehicle to the dealer with improper linkage adjustments in the transmission had become remote and was not a proximate cause of this injury. We are of the opinion that the negligence of the plaintiff was the sole and proximate cause of the injury sustained by him.
For the foregoing reasons the judgment appealed from is affirmed at appellants’ cost.