272 So.2d 49 (1973)
Charles A. CASE
v.
METAIRIE FORD et al.
No. 5197.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1973.
Rehearing Denied February 6, 1973.
Writ Refused April 12, 1973.
*50 Clarence O. Dupuy, New Orleans, for plaintiff-appellant.
Gerald R. Cooper, Normann & Normann, New Orleans, for defendant, third-party defendant, third-party plaintiff-appellee.
Paul B. Deal, Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, for defendants, third-party plaintiffs, third-party defendants-appellants.
Before REDMANN, LEMMON and GULOTTA, JJ.
REDMANN, Judge.
Plaintiff sued the Ford Motor Company and its insurer and a local Ford dealer for personal injury occurring as plaintiff's three-month-old Ford automobile started from a stopped position, and the right front seat in which he was seated tilted backwards. Ford and its insurer third-partied the dealer and it third-partied them.
Judgment cast only Ford and its insurer for $10,000, and rejected their third-party demand. They appealed. (Plaintiff also appealed. A question of the timeliness of his appeal bond need not be considered since, as a result of our necessary review and decision of the first appeal, we conclude that question is moot.)
The car seat is bolted to a movable track (allowing forward or backward adjustment of the seat) by four bolts, one in each corner. The two front bolts were, after the incident, found on the floor of the car, unbroken and showing no sign of wear, stripping or other damage. This seat had never rattled nor given any other indication of looseness; the driver's seat had suggested looseness (by what circumstances was not shown) and was repaired by the dealer a *51 month prior to this occurrence during a 6,000-mile checkup. That the movable track was neither stripped nor broken apart is fairly proved by the uncontradicted evidence that it has since served in the car (with replacement bolts) without further incident.
Defendants' experts opined that the bolts could not have either been loosely installed or simply worked themselves loose without causing the seat to rock and to rattle considerably and without the bolts showing wear. They also testified their inspection shortly after the occurrence showed the lock washers to have bright metal appearing through the dull gray finish, and the movable tracks to have marked cutting into their surface, from which circumstances they opined that the bolts had originally been tightened firmly to the track.
Plaintiff's expert mechanic opined the bolts worked themselves loose. However, he also testified the lock washer "would hold it from loosing themselves up. The Court: If they were on. A: That's right, But, maybe in production, you know how fast we live in our country, everything is fast. Anything could happen, that's right. I don't know."
Yet plaintiff's photograph shows the lock washers on the bolts on the car floor the day after the accident, and defendants' experts testified the bolts were so constructed and the lock washers so made that they could not come off (because their inside diameter was smaller than the bolt thread diameter).
A defense photographer testified he had to put the bolts into a vise and use vise-grip pliers to twist the washers off.[1]
Plaintiff's expert testified that plaintiff's pictures did not show lock washers on the bolts; that what was suggested to be a lock washer was (part of) the head of the bolt. He finally suggested, at the court's prompting, that it could be a flat (nonlocking) washer. He identified, in plaintiff's photograph of the car floor, some narrow, flat, irregularly oblong and apparently solid (i. e., without a hole through which the large bolt could pass) object as the lock washer.
We conclude the testimony of defendant's experts, plaintiff's photograph and defendant's photographer's testimony preponderate and establish that the lock washers were on the bolts at the time of the occurrence. Therefore plaintiff's expert's opinion was at least in part based on a false factual basis.
Accordingly, in our view plaintiff has shown only that the incident occurred because the two bolts were not in place. Defense experts testified factually the bolt washers and tracks showed the evidence of having been properly tightened, and all experts agreed that properly tightened bolts could not have worked themselves loose. Plaintiff's expert did not testify that the washers and tracks did not show indication of proper tightening: he at best concluded that, since the bolts were out, they must not have been properly installed. The other evidence ignored, that conclusion is one possibility. Yet another possibility exists, namely that someone (perhaps a thief or vandal) unscrewed the bolts. (Plaintiff's testimony of keeping the car generally locked does not necessarily exclude this possibility.) And in view of all the expert evidence and of plaintiff's testimony that the seat never previously rattled, rocked or showed any other sign of looseness, the only explanation advanced consistent with the facts is that the bolts were unscrewed.
If, as plaintiff argues, this is a case where plaintiff's evidence made a prima facie case and shifted to defendants the *52 burden of going forward with the evidence, defendants have met that burden.
The judgment in plaintiff's favor is reversed and his suit dismissed at his cost; and in all other respects the judgment appealed from is affirmed.
LEMMON, J., concurs with written reasons.
GULOTTA, J., dissents with written reasons.
GULOTTA, Judge (dissenting).
I respectfully dissent.
In my opinion, the question in this case is one of responsibility of going forward with the evidence in a products liability case. It is clear that plaintiff established a strong inference of negligence. Case was injured as a result of the seat falling backwards. The new automobile was purchased approximately three months before the incident. There was 8,500 miles on the odometer at the time of the occurrence. At a 6,000 mile check of the automobile, the left front bucket seat was loose requiring servicing. The right front bucket seat (the seat that caused the injury) was not inspected at that time by the agency. This seat was required on November 17 after the accident. Additional work was done on the right front seat on December 8, 1965 and on March 9, 1966. No explanation was given by Ford or Metairie Ford of what was done at that time. The only explanation was that no charge was made for the service. Defendant's expert, Ray Bailey, testified that if the seat is properly installed at the factory, no servicing was necessary; yet, the left front seat required servicing before the accident.
The trial judge in part of his reasons for judgment stated:
"The efforts of the defendants through their witnesses, Mr. Stowell and Mr. Pujol have failed to convince this Court that the seats were properly installed and secured at the factory. The record is void of any evidence that this vehicle was properly inspected before leaving the factory. The Ford Motor Company has not discharged its duty toward the purchaser to make their product safe for normal use for which it was intended."
A plaintiff seeking to recover for injuries received from an unsafe product must prove three things. The first is that he has been injured by the product. The second is that injury occurred because the product was defective. The third is that the defect existed when the product left the hands of the particular defendant. Prosser on Torts, 4th Edition, Pages 671-676. These requirements were met by plaintiff. He showed, first, he was injured as a result of the seat falling backward. He showed, secondly, an obvious defect in the seat of a relatively new automobile causing the seat to fall. When a product breaks upon being subjected to normal use and injury results, this is evidence of the defectiveness of the product. Plaintiff is not compelled to point out specifically what particular defect caused the accident. 63 Am.Jur.2d, Products Liability, page 25, § 15. Once having proved by a preponderance of the evidence that the accident was caused because of a defect, it then becomes the responsibility of the defendant to show that the product was not defective. The burden of going forward with the evidence must be placed on him who is in a better position to carry itin this case, Ford. The third requirement (i.e., that the defect existed when the automobile left the manufacturer) takes this case out of the realm of res ipsa loquitur because plaintiff had control and dominion over the automobile.
Nevertheless, in a products liability case, an inference of negligence of the manufacturer is created when the defect in the instrumentality (in this case, the seat) manifests itself shortly after being put in use (in this instance, after a period of three months from purchase) when the purchaser shows the instrument was used for that which was intended and no independent occurrence *53 caused the failure.[*] In this matter, Case testified the seat was subjected to only normal use. He testified further that only Donald Smith or himself drove the automobile and no one else was permitted to drive. Any consideration that a thief or vandal could have loosened the seat causing it to fall is purely speculative. No evidence supports this supposition.
Once the inference is created, defendant must exculpate himself. This, Ford failed to do. The evidence showed the seat is connected to a track by a bolt which screws into a nut and bracket recessed in the bottom of the seat. While Ford successfully carried the burden of showing that the bolts were not defective, they failed to show that either the nut and bracket in the seat did not break or that the track was not defective. Defendant's explanation for not producing into court that part of the seat which contains the bracket and bolt was that it would be necessary to destroy the seat in order to do so. While testimony was offered by defendant to show that the track was not defective, the track itself was not offered into evidence. However, a similar track from another automobile was offered. Both the explanation offered and the introduction of the similar track is, in my opinion, insufficient. In the absence of any evidence that the bolts were tampered with or unloosened by the plaintiff, by a third party or that the seat was used for any purpose other than was intended, it necessarily follows that the defect existed when the product left the hands of the particular defendant. Because Ford failed to exculpate itself, the judgment should be affirmed.
Accordingly, I respectfully dissent.
LEMMON, Judge (concurring).
Plaintiff lost this case because he failed to prove that the accident was caused by a defect attributable to Ford. While a plaintiff in a products liability case need not show the technical reason why a defect existed, he must produce evidence that a defect did in fact exist[1] or show why such evidence was not available.
Viewing plaintiff's evidence in the light most favorable to him, I conclude that he has proved only that an accident involving the seat occurred and that two bolts designed to hold the seat in place were found lying on the floor of his car after the accident. His expert suggests that the bolts were omitted at the factory (in which case the defect would have manifested itself immediately or certainly before 9,000 miles of use) or that the bolts were improperly installed at the factory (in which case the seat would have rocked or rattled considerably and the bolts would have exhibited findings of wear).
If the bolts, track, or any other part of the mechanism itself were defective, plaintiff's evidence does not suggest it. Furthermore, the availability of any defective mechanism was entirely in plaintiff's control, and under these circumstances such evidence was his responsibility to produce.
NOTES
[1] By a ruling we need not review, the bolts themselves were refused admission into evidence because of the photographer's having thus somewhat altered them shortly before trial.
[*] Joyner v. Aetna Casualty & Surety Company, 259 La. 660, 251 So.2d 166 (1971).
[1] See, i. e. Samaha v. Southern Rambler Sales, Inc. 146 So.2d 29 (La.App. 4th Cir. 1962).